IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


KIMERLY DALE FELGER,           )
                               )
                    Plaintiff, )
                               )
     vs.                       )
                               )
SMITH & NEPHEW, INC.,          )
                               )    No. 3:15-cv-0210-HRH
                    Defendant. )
_____)


O R D E R

Motion to Dismiss

Defendant moves to dismiss plaintiff's complaint.[1] This motion is opposed.[2] Oral argument was requested but is not deemed necessary.

Background

Plaintiff is Kimerly Dale Felger. Defendant is Smith & Nephew, Inc.

Defendant designed, manufactured, and marketed the Birmingham Hip Resurfacing (BHR) System, which is used in total hip replacements (THR). The BHR System is a Class III medical device. "A Class III device is subject to a pre-market approval [PMA] process

---

[1]Docket No. 4. In deciding the motion to dismiss, the court has considered the supplemental authority submitted by defendant at Docket No. 12.

[2]Docket No. 8.

of the" Food and Drug Administration (FDA). Stengel v. Medtronic Inc., 704 F.3d 1224, 1226 (9th Cir. 2013).

> The FDA's pre-market approval process of a Class III device is rigorous. The FDA performs a risk-benefit assessment of the device and determines the adequacy of the manufacturer's proposed label. The FDA then denies, approves, or approves with conditions on distribution, marketing, or sale.

Id. (citations omitted). "The FDA spends an average of 1,200 hours reviewing each [PMA] application and grants premarket approval only if it finds there is a reasonable assurance of the device's safety and effectiveness[.]" Riegel v. Medtronic, Inc., 552 U.S. 312, 318 (2008) (internal citations omitted). The PMA application includes

> among other things, full reports of all studies and investigations of the device's safety and effectiveness that have been published or should reasonably be known to the applicant; a full statement of the device's components, ingredients, and properties and of the principle or principles of operation; a full description of the methods used in, and the facilities and controls used for, the manufacture, processing, and, when relevant, packing and installation of, such device; samples or device components required by the FDA; and a specimen of the proposed labeling.

Id. (citations omitted).

> Even after pre-market approval is granted, there are post-approval statutory and regulatory requirements the manufacturer must satisfy, in addition to any post-approval conditions the FDA imposes on the specific device subject to the PMA. In general, the manufacturer must refrain from manufacturing, packaging, storing, labeling, distributing or advertising the medical device "in a manner that is inconsistent with any

> conditions to approval specified in the PMA approval order for the device." 21 C.F.R. § 814.80. In addition, the manufacturer must report deaths and serious injuries that the device "has or may have caused or contributed to" and certain device malfunctions, and it "must establish and maintain adverse event files," and "submit specified followup." 21 C.F.R. §§ 814.84(a) (must comply with Part 803 reporting requirements); 803.1(a) (general statement of reporting requirements).

Herron v. Smith & Nephew, Inc., 7 F. Supp. 3d 1043, 1048 (E.D. Cal. 2014).

The BHR was approved by the FDA on May 9, 2006, with conditions.[3] Defendant was required to submit a PMA supplement "when unanticipated adverse effects, increases in the incidence of anticipated adverse effects, or device failures necessitate a labeling, manufacturing, or device modification."[4] Defendant also agreed "to conduct a study to evaluate the learning curve, training program, and longer-term safety and effectiveness of the BHR System in the United States."[5] As part of the study, "cobalt and chromium ions concentration in the blood and renal function data ... w[ere to] be collected postoperatively

---

[3]Letter of Approval, Exhibit A, Smith & Nephew, Inc.'s Rule 12(b)(6) Motion to Dismiss, Docket No. 4. The court may consider the approval letter without converting the instant motion into a motion for summary judgment because its "'contents are alleged in a complaint'" and no party questions its authenticity. Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999)).

[4]Conditions of Approval at 1, attached to Letter of Approval, Exhibit A, Smith & Nephew, Inc.'s Rule 12(b)(6) Motion to Dismiss, Docket No. 4.

[5]Letter of Approval at 2, Exhibit A, Smith & Nephew, Inc.'s Rule 12(b)(6) Motion to Dismiss, Docket No. 4.

and at the 1-, 4-, and 10-year follow-up timepoints."[6]  Defendant also agreed "to provide an analysis of adverse events and complaints ... received , regarding the BHR system" and to "use this analysis to provide a justification for modifications to the training program, post-approval study, labeling, and/or device design."[7]

Plaintiff alleges, however, that defendant

> failed to timely report adverse events; failed to timely conduct ... investigations and analysis; failed to timely report any and all information concerning product failures and corrections; failed to timely and fully inform [the] FDA of unanticipated adverse events, increases in the incidence of adverse effects, or device failures necessitating a labeling, manufacturing or device modification; failed to conduct necessary design validation; and sold a misbranded and adulterated product.[8]

On October 30, 2008, plaintiff underwent a left total hip replacement during which a BHR System was implanted.[9]  Plaintiff alleges that

> [t]he defective design and manufacture of the BHR allows fretting and corrosion to occur at the junction of the head of the Birmingham cup and the Acetabular lining.  The fretting and corrosion allows metal ions, including cobalt and chromium, to be released into the surrounding tissues.  The fretting and corrosion and release of ions also manifest in increased cobalt and chromium blood levels of the patient.  These cobalt and

---

[6]Id. at 3.

[7]Id.

[8]Complaint at 10-11, ¶ 34, attached to Notice of Removal, Docket No. 1.

[9]Id. at 5, ¶ 16.

chromium ions destroy surrounding tissue and bone often
causing pseudo tumors and a condition called metallosis.[10]

Plaintiff alleges that "[a]fter the surgery, fretting and corrosion from the BHR THR caused large amounts of toxic metal ions and particles to be released from the BHR into and throughout [p]laintiff's blood stream, organs, and soft tissue."[11] Ultimately, it was recommended that plaintiff "have the BHR in her left hip removed through a painful, expensive, and risky hip revision surgery."[12] On October 19, 2013, plaintiff had the revision surgery, which "demonstrated that she had significant tissue necrosis, both chronic and acute tissue and joint inflamation in the area of the Smith and Nephew BHR THR, all symptoms of metallosis. In addition, her blood cobalt levels were found to be elevated at 47 ng/L."[13]

Plaintiff alleges that her injuries "were caused by the defective design and construction, lack of adequate warnings, lack of adequate notice once problems with the BHR were known, and the unreasonably dangerous character of the BHR THR that was implanted."[14] She alleges that had defendant "not concealed the known defects, the early

---

[10]Id. at 4, ¶ 14.

[11]Id. at 5, ¶ 17.

[12]Id. at 6, ¶ 18.

[13]Id. at ¶ 20.

[14]Id. at 7, ¶ 23.

failure rate, the known complications and/or the unreasonable risks associated with the use of the BHR, [she] would have not consented to be implanted with the BHR."[15]

On October 9, 2015, plaintiff commenced this action in state court. On November 2, 2015, defendant removed the action to this court on the basis of diversity jurisdiction. Plaintiff's complaint contains seven counts: 1) a strict products liability manufacturing defect claim, 2) a strict products liability design defect claim, 3) a strict products liability failure to warn claim, 4) negligence claims, 5) a negligent misrepresentation claim, 6) a claim pursuant to the Alaska Unfair Trade Practices and Consumer Protection Act (UTPA), and 7) a claim for punitive damages.

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, defendant now moves to dismiss plaintiff's complaint based on preemption grounds.

## Discussion

"Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires not only 'fair notice of the nature of the claim, but also grounds on which the claim rests." Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 n.3 (2007)). "To survive a Rule 12(b)(6) motion to dismiss, a 'plaintiff must allege enough facts to state a claim to relief that is plausible on its face.'" Turner v. City and County of San Francisco, 788 F.3d 1206, 1210 (9th Cir. 2015) (quoting Lazy Y Ranch Ltd. v.

---

[15]Id.

Behrens, 546 F.3d 580, 588 (9th Cir. 2008)). "In assessing whether a party has stated a claim upon which relief can be granted, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party; but 'conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal.'" Id. (quoting Cousins v. Lockyer, 568 F.3d 1063, 1067 (9th Cir. 2009)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "This standard 'asks for more than a sheer possibility that a defendant has acted unlawfully,' but it 'is not akin to a probability requirement.'" Id. (quoting Iqbal, 556 U.S. at 678).

"In 1976, Congress enacted the Medical Device Amendments [MDA] to the FDCA, which 'swept back some state obligations and imposed a regime of detailed federal oversight.'" Perez v. Nidek Co., Ltd., 711 F.3d 1109, 1117 (9th Cir. 2013) (quoting Riegel, 552 U.S. at 316). The MDA contains an express preemption provision:

> Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
>
> (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a).

> An implementing regulation provides that state and local requirements are only preempted by the MDA when the FDA "has established specific counterpart regulations or there are other specific requirements applicable to a particular device under the act, thereby making any existing divergent State or local requirements applicable to the device different from, or in addition to, the specific Food and Drug Administration requirements."

Perez, 711 F.3d at 1117 (quoting 21 C.F.R. § 808.1(d)).

"The Supreme Court has decided three preemption cases under the MDA. The rule that emerges from these cases is that the MDA does not preempt a state-law claim for violating a state-law duty that parallels a federal-law duty under the MDA." Stengel, 704 F.3d at 1228. In other words,

> [s]tate requirements are preempted under the MDA only to the extent that they are different from, or in addition to the requirements imposed by federal law. Thus, § 360k does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case "parallel," rather than add to, federal requirements.

Riegel, 552 U.S. at 330 (citations omitted). But, "[i]f state law liability could be found notwithstanding compliance with the federal requirements, those state law duties are not

parallel to the federal requirements and will be [expressly] preempted." Eidson v. Medtronic, Inc., 40 F. Supp. 3d 1202, 1215 (N.D. Cal. 2014) (Eidson II).

State-law claims may also be impliedly preempted. "The implied preemption statute, 21 U.S.C. § 337(a), states in relevant part: '[A]ll such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States.'" Beavers-Gabriel v. Medtronic, Inc., 15 F. Supp. 3d 1021, 1030 (D. Hawai'i 2014) (quoting 21 U.S.C. § 337(a)). "[T]o avoid implied preemption, a cause of action must rely on traditional state tort law and not be based solely on a violation of federal law." Id. at 1032. In other words, "a state law cause of action escapes implied preemption if it would state a claim under state law even in the absence of the FDCA." Eidson v. Medtronic, Inc., 981 F. Supp. 2d 868, 881 (N.D. Cal. 2013) (Eidson I).

"Together, express preemption and implied preemption provide only a 'narrow gap' through which a plaintiff's claims must fit in order to survive." Eidson II, 40 F. Supp. 3d at 1216 (quoting Perez, 711 F.3d at 1120). "'The plaintiff must be suing for conduct that <u>violates</u> the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing <u>because</u> the conduct violates the FDCA (such a claim would be impliedly preempted under Buckman).'" Perez, 711 F.3d at 1120 (quoting In re Medtronic, Inc. Sprint Fidelis Leads Products Liability Litig., 623 F.3d 1200, 1204 (8th Cir. 2010)).

Plaintiff contends that her claims survive preemption because they are based on post-PMA requirements. In order to determine whether plaintiff's contention is correct, the court must consider each of plaintiff's claims in turn.

In Count One of her complaint, plaintiff asserts a manufacturing defect product liability claim. Plaintiff alleges that "[t]he BHR components ... were defective in manufacture and construction when they left the hands of Smith & Nephew in that they deviated from applicable federal requirements for these medical devices and posed a serious risk of injury and /or death."[16] Some courts have found such claims expressly preempted because the manufacturing process that the medical device manufacturer uses is part of the risk-benefit analysis the FDA does during the PMA process. See, e.g., Scovil v. Medtronic, Inc., 995 F. Supp. 2d 1082, 1095 (D. Ariz. 2014). However, other courts have found that manufacturing defect claims are not preempted if the plaintiff alleges that the manufacturer deviated from the manufacturing process that was approved by the FDA. See, e.g., Funke v. Sorin Group USA, Inc., Case No. 5ACV 15-01182-CJC (ASx), 2015 WL 7747011, at *6 (C.D. Cal. Nov. 24, 2015) ("A defective manufacturing claim ... is not preempted insofar as it alleges that the manufacturing of the device both fell short of the FDA's requirements for manufacturing and—based on the same deficiency—was defectively manufactured under [state] law"). Such a manufacturing defect claim would

---

[16]Complaint at 11, ¶ 37, attached to Notice of Removal, Docket No. 1.

also not be impliedly preempted. See, e.g., Williams v. Smith & Nephew, Inc., — F. Supp. 3d —, 2015 WL 4984531, at *10 (D. Md. 2015) (holding that manufacturing defect claim is not impliedly preempted because it had "an independent basis in Maryland tort law that predates the requirements outlined in the PMA process").

Here, plaintiff has made a conclusory allegation that defendant "deviated from applicable federal requirements" in manufacturing the BHR components.[17] Such a conclusory allegation is not sufficient to state a plausible manufacturing defect claim that would survive preemption. Plaintiff must plead some factual support for her allegation that defendant deviated from the FDA-approved manufacturing process. Although plaintiff had pleaded that defendant used materials in the manufacture of the device that it knew would cause fretting and corrosion,[18] this is not an allegation that defendant deviated from the FDA-approved manufacturing process, but rather a design defect allegation. Because plaintiff has not alleged sufficient factual support for her assertion that defendant deviated from the FDA-approved manufacturing process for the BHR System, plaintiff's manufacturing defect claim in Count One is dismissed. Plaintiff is given leave to amend as to this claim because it is possible that she can plead a manufacturing defect claim that would survive preemption.

---

[17] Id. at 11, ¶ 37.

[18] Id. at 5, ¶ 15.

In Count Two, plaintiff asserts a design defect claim. Plaintiff alleges that the BHR was "defective in design" because the design "allows fretting and corrosion[,]" which was "the very condition that Smith & Nephew marketed and warranted would not occur."[19] This appears to be nothing more than a claim that "attacks 'the risk/benefit analysis that led the FDA to approve an inherently dangerous Class III device[,]'" the type of claim which courts have found to be "'expressly preempted by § 360k.'" Houston v. Medtronic, Inc., 957 F. Supp. 2d 1166, 1177 (C.D. Cal. 2013) (quoting Bryant v. Medtronic, Inc., 623 F.3d 1200, 1206 (8th Cir. 2010)); see also, Martin v. Medtronic, Inc., 32 F. Supp. 3d 1026, 1043-44 (D. Ariz. 2014) (collecting cases). Because plaintiff's design defect claim is expressly preempted, plaintiff's Count Two is dismissed. Plaintiff is not given leave to amend as to Count Two because any amendment would be futile as it is not possible to plead a design defect claim that would survive preemption.

In Count Three, plaintiff asserts a failure-to-warn claim. Plaintiff alleges that defendant "failed to provide adequate and timely warnings or instructions regarding the BHR and its known defects."[20] This is an allegation that defendant should have provided additional warnings beyond what was required by the FDA. Courts have held that such failure-to-warn claims are expressly preempted. See Eidson I, 981 F. Supp. 2d at 887

---

[19]Id. at 12-13, ¶¶ 42-43.

[20]Id. at 14, ¶ 53.

(holding that failure to warn claims that "impose[] obligations ... beyond those imposed during the PMA process" are expressly exempted).

However, "[c]ourts have held that failure-to-warn claims based on failure to report adverse events to the FDA escape both express and implied preemption." Martin, 32 F. Supp. 3d at 1042 (citation omitted). Here, plaintiff makes conclusory allegations that defendant failed to report adverse events to the FDA, but plaintiff has not alleged any specific facts to support these allegations. It is also not clear whether plaintiff is referring to pre- or post-PMA adverse events. Plaintiff's allegations as to defendant's failure to report adverse events are not sufficient to state a plausible claim.

Thus, plaintiff's Count Three is dismissed. Plaintiff is given leave to amend her failure-to-warn claim because it is possible to plead a failure-to-warn claim that survives preemption if such a claim is based on sufficient allegations that the defendant failed to report post-PMA adverse events to the FDA.

In Count Four, plaintiff asserts several negligence claims. Plaintiff alleges that defendant was negligent in the following respects:

> a. Smith & Nephew failed to adequately design and manufacture the Defective Device[] to insure that it would not corrode, erode, deteriorate[,] fret, and induce severe metal toxicity in the patient. The flaws include, but are not limited to, the following:
> i. Failed to accurately establish the in vivo life expectancy of the BHR, in violation of 21 C.F.R. § 820.30(f);

ii. Failed to validate the anticipate[d] wear of the acetabular cup prior to release into commercial distribution in violation of 21 C.F.R. § 820.30(f);
iii. Failed to establish and maintain appropriate reliability assurance testing to validate the BHR design both before and after its introduction into the marketplace, in violation of 820.30(g);
iv. Failed to conduct adequate bio-compatibility studies to establish the BHR's propensity to effuse metallic contaminates into the human blood and tissue;
v. Failed to establish and maintain procedures for implementing corrective and preventable action in response to, inter alia, complaints regarding the BHR ... and other quality problems associated with the BHR in violation of 21 C.F.R. 820.100;
vi. Failed to appropriately respond to adverse incident reports that strongly indicated the acetabular component was [m]alfunctioning [as defined in 21 C.F.R. 803.3], or otherwise not responding to its Design Objective Intent in violation of 21 C.F.R. 820.198;
vii. Continued to inject the BHR into the stream of commerce when it knew of or should have known that the acetabular component was malfunctioning as defined in 21 C.F.R. 803.3 or otherwise not responding to its Design Objective Intent.

b. Smith & Nephew failed to adequately test the Defective Device[] to insure that it would not corrode, erode, deteriorate, fret and/or induce severe metal toxicity in the patient;

c. Smith & Nephew failed to conduct anything other than bench testing so that ... patients became in essence the Smith & Nephew Defendant's first clinical trial; [and]

[d.] Smith & Nephew failed to promptly act upon reports of early failure such that the BHR continued to be im-

> planted in unknowing patients by surgeons well after it
> should have been recalled or sales suspended.[21]

Some of plaintiff's negligence claims are preempted. "Negligence in researching, manufacturing, selling, labeling, testing, distributing, and analyzing [a medical device] are claims preempted by federal law because they all address the safety of the device in ways that the FDA considers as part of the PMA process." Scovil, 995 F. Supp. 2d at 1096. Plaintiff's claims in Count Four that are based on allegations that defendant was negligent in researching, manufacturing, selling, labeling, pre-PMA testing, distributing, and analyzing the BHR System are dismissed. Plaintiff is not given leave to amend these claims as amendment would be futile because it is not possible to plead such claims so that they survive preemption.

In Count Four, plaintiff has also alleged that defendant was negligent in its response to adverse events. A negligence claim that is premised on a failure to report adverse reports to the FDA is neither expressly nor impliedly preempted, in part, because it involves post-PMA conduct. Eidson I, 981 F. Supp. 2d at 891. So, it follows that a negligence claim premised on a failure to respond to post-PMA adverse reports would also not be preempted. However, plaintiff's negligence claim based on allegations that defendant failed to respond to post-PMA adverse events must still be dismissed because plaintiff has not alleged any factual support for this claim. Plaintiff has not identified any

---

[21]Id. at 15-17, ¶ 59.

post-PMA adverse events or reports to which defendant failed to respond. Thus, plaintiff's claim that is based on allegations that defendant was negligent in its response to adverse events is dismissed. But, plaintiff is given leave to amend as to this claim because it is possible to plead such a claim so that it survives preemption.

In Count Four, plaintiff also makes a conclusory allegation that defendant was negligent in the post-PMA testing it was required to do. A plausible claim cannot be based on a such a conclusory allegation. However, it may be possible that such a claim, if supported by factual allegations, would survive preemption. Thus, plaintiff is given leave to her amend her negligence claim as it relates defendant's post-PMA testing.

In Count Five, plaintiff asserts a negligent misrepresentation claim. Plaintiff alleges that defendant misrepresented the risks of the BHR System to her, her physicians, the medical community, and the public.[22] What plaintiff seems to be alleging is that defendant failed to adequately warn her physician, the medical community, her, and the public about the risks of the BHR system. But, as discussed above in connection with plaintiff's failure to warn claim in Count Three, a claim that defendant's warnings were inadequate is preempted because "requiring [d]efendant[] to alter the ... Device's warnings and label in order to provide extra warnings beyond those already approved during the PMA process would impose labeling and warning requirements 'different from, or in addition to' federal

---

[22]Id. at 18, ¶ 66.

requirements...." Eidson I, 981 F. Supp. 2d at 884. Thus, plaintiff's negligent misrepresentation claim is dismissed. Plaintiff is not given leave to amend her negligent misrepresentation claim because amendment would be futile as it is not possible that she could plead such a claim that would survive preemption.

In Count Six, plaintiff asserts a UTPA claim. Plaintiff alleges that defendant "misrepresent[ed] the characteristics, ingredients, uses, benefits, quality, standards and/or risks of the Defective Device[]."[23] Plaintiff alleges that these "misrepresentations were unfair methods of competition and/or unfair or deceptive acts or practices, and a breach of the" UTPA.[24] Plaintiff again seems to be alleging that defendant failed to provide adequate warnings about the risks associated with the BHR System, a claim that would be expressly preempted because it would impose labeling and warning requirements beyond what the FDA imposed during the PMA process. Thus, plaintiff's UTPA claim is dismissed. Plaintiff is not given leave to amend her UTPA claim because amendment would be futile as it is not possible that she could plead a UTPA claim that survives preemption.

Count Seven is plaintiff's "claim" for punitive damages. This count is dismissed because punitive damages are a form of relief, not a cause of action. Doe v. Colligan, 753

---

[23]Id. at 19, ¶ 71.

[24]Id. at ¶ 72.

P.2d 144, 145 n.2 (Alaska 1988). Plaintiff is not given leave to amend as to Count Seven but she may include a request for punitive damages in her prayer for relief in her amended complaint, should she elect to file one.

## Conclusion

Defendant's motion to dismiss[25] is granted. All of plaintiff's claims are dismissed. As set out above in more detail, plaintiff is given leave to amend as to some of her claims in Counts One, Three, and Four. Plaintiff's amended complaint, should she elect to file one, shall be filed on or before March 18, 2016.

Plaintiff's motion for a hearing[26] is denied.

DATED at Phoenix, Arizona, this 4th day of March, 2016.

/s/ H. Russel Holland
United States District Judge

---

[25]Docket No. 4.

[26]Docket No. 11.